# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| BARBARA FORMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>MERIDIAN BIOSCIENCE, INC., JOHN A. KRAEUTLER, and MELISSA A. LUEKE<br><br>       Defendants. | Case No. 1:17-cv-00774-SJD<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS**<br><br>Judge:    Hon. Susan J. Dlott |

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS .................. 3

  A.  Procedural History and Lead Counsel's Investigation ........................................... 3

  B.  Settlement Negotiations ..................................................................................... 5

III.  THE PROPOSED TERMS OF SETTLEMENT ........................................................... 6

  A.  Settlement Class Definition ................................................................................ 6

  B.  Monetary Consideration ..................................................................................... 6

  C.  Release Provisions ............................................................................................. 7

  D.  Attorneys' Fees and Reimbursement of Expenses ................................................ 9

IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT
     IS APPROPRIATE ............................................................................................. 10

  A.  The Settlement Approval Process ...................................................................... 10

  B.  The Proposed Settlement Meets the Requirements for Preliminary Approval
     Under Rule 23(e) ............................................................................................. 11

    1.  Plaintiff and Her Counsel Have Adequately Represented the Class ................ 11

    2.  The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by
       Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation ....... 12

  C.  The Relief Provided to the Class is Adequate and Supports Preliminary Approval ......... 14

    1.  The Substantial Benefits for the Class, Weighed Against the Costs, Risks and
       Delay of Trial and Appeal Support Preliminary Approval .............................. 14

    2.  The Proposed Method for Distributing Relief is Effective ............................. 17

    3.  Attorneys' Fees .......................................................................................... 18

    4.  The Parties Have No Side Agreements Besides Opt-Outs .............................. 19

  D.  There Was No Preferential Treatment; the Proposed Plan of Allocation is Designed to
     Treat Class Members Equitably ......................................................................... 19

  E.  Each of the Sixth Circuit Factors are Satisfied .................................................. 20

    1.  The Risk of Fraud or Collusion .................................................................. 21

    2.  The Complexity, Expense, and Likely Duration of the Litigation ................... 21

    3.  The Amount of Discovery Engaged in by the Parties .................................... 21

    4.  The Opinions of Class Counsel and Class Representatives ............................ 23

    5.  The Reaction of Absent Class Members ...................................................... 24

    6.  The Public Interest ..................................................................................... 24

V.    CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS
      APPROPRIATE ........................................................................................... 25

   A.   The Settlement Class Members Are So Numerous That Joinder Is Impracticable ............ 25

   B.   Common Questions of Law or Fact Exist ....................................................... 25

   C.   Plaintiff's Claims Are Typical of Those of the Settlement Class ..................... 26

   D.   Plaintiff is an Adequate Representative of the Settlement Class ..................... 27

   E.   The Requirements Of Rule 23 (b)(3) Are Satisfied ......................................... 28

      1.   Common Legal and Factual Questions Predominate ..................................... 28

      2.   A Class Action Is the Superior Means To Adjudicate Plaintiff's and Settlement Class
           Members' Claims .................................................................................. 29

VI.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE
      CONSTITUTIONALLY SOUND AND APPROPRIATE ................................. 29

VII.  PROPOSED SETTLEMENT SCHEDULE ........................................................ 33

VIII.  CONCLUSION ............................................................................................. 34

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................... 27, 28, 29

*Barnes v. Winking Lizard, Inc.*,
No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) ............................................. 9

*Beard v. Dominion Homes Fin. Servs.*,
No. 2:06-cv-00137, 2007 WL 2838934 (S.D. Ohio Sep. 26, 2007) ........................................ 26

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) ............................................................................................ 29

*Bowling v. Pfizer*,
143 F.R.D. 141 (S.D. Ohio 1992) .................................................................................... 12, 23

*Bowman v. Art Van Furniture, Inc.*,
No. 17-11630, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018).............................................. 32

*Cates v. Cooper Tire & Rubber Co.*,
253 F.R.D. 422 (N.D. Ohio 2008)............................................................................................ 27

*City of Providence v. Aéropostale, Inc.*,
No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
*Arbuthnot v. Pierson*, 677 F. App'x 73 (2d Cir. 2015) ........................................................... 18

*Connectivity Sys. Inc. v. Nat'l City Bank*,
No. 2:08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 25, 2011) ............................................ 15

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006)................................................................................................... 25

*Daoust v. Maru Rest., LLC*,
No. 17-cv-13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) ............................................ 9

*Dick v. Sprint Communs. Co. L.P.*,
297 F.R.D. 283 (W.D. Ky. 2014)............................................................................................... 8

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974) ................................................................................................................ 31

*Engman* v. *Boyd*,
2009 WL 1974460 (W.D. Mich. July 6, 2009) ....................................................................... 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ................................................................................................................ 28

*Ford v. Federal-Mogul Corp.*,
    No. 2:09-cv-14448, 2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ........................................... 16

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981).................................................................................................... 24

*Garden City Emples. Ret. Sys v. Psychiatric Solutions*,
    No. 3:09-00882, 2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012) ..................................... 25, 29

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015)...................................................................................................... 15

*Gooch v. Life Investors Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012)...................................................................................................... 33

*Graybill v. Petta Enters., LLC*,
    No. 2:17-cv-418, 2018 WL 4573289 (S.D. Ohio Sep. 25, 2018) ................................................ 30

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)......................................................................... 24

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007).................................................................................... 10

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001)...................................................................................................... 16

*Huguley v. General Motors Corp.*,
    128 F.R.D. 81 (E.D. Mich. 1989)............................................................................................... 10

*In re Accredo Health, Inc.*,
    No. 03-2216 DP, 2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006)......................................... 25

*In re Auto. Parts Antitrust Litig.*,
    No. 12-md-02311, 2016 U.S. Dist. LEXIS 98447 (E.D. Mich. June 20, 2016) ...................... 17

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)........................................................................ 19

*In re Chicken Antitrust Litig.*,
    810 F.2d 1017 (11th Cir. 1987)................................................................................................. 17

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)......................................................................... 12

*In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*,
    Case No. 1:12-MD-2316, 2016 WL 6909078 (N.D. Ohio Jan. 26, 2016) ............................... 13

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................................. 21

*In re JDS Uniphase Corp. Sec. Litig*.,
    No. C-02-1486-CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ........................... 15

*In re Merrill Lynch & Co. Research Reports Sec. Litig*., No. 02 MDL 1484 (JFK), 2007 WL
    313474, at \*10 (S.D.N.Y. Feb. 1, 2007) ................................................................... 17

*In re Nat. Century Fin. Enterprises, Inc. Inv. Litig*.,
    No. 2:03-md-1565, 2009 WL 1473975 (S.D. Ohio May 27, 2009)........................................ 18

*In re Packaged Ice Antitrust Litig*.,
    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .............................. 18, 23

*In re Provectus Biopharmaceuticals, Inc. Sec. Litig*.,
    No. 3:14-cv-00338-PLR-HBG, 2016 WL 7735229 (E.D. Tenn. Dec. 12, 2016) ..................... 8

*In re Se. Milk Antitrust Litig*.,
    No. 2:08-MD-1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ................................ 14, 21

*In re Sonic Corp. Customer Data Sec. Breach Litig*.,
    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)........................................ 12

*In re Telectronics Pacing Sys., Inc*.,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)............................................................................. 24

*In re Tyco Int'l, Ltd*.,
    535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................................. 15

*In re Vivendi Universal, S.A. Sec. Litig*.,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)............................................................................... 15

*Int'l Union, UAW v. Ford Motor Co.*,
    Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ........................... 10

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ........................................................................... 13

*Lewis v. Newman*,
    59 F.R.D 525 (S.D.N.Y. 1973)......................................................................................... 21

*Mitcham v. Intrepid U.S.A., Inc.*,
    Civil Action No. 3:17-CV-703-CHB, 2019 WL 2269918 (W.D. Ky. May 28, 2019) ............ 32

*Mullins v. S. Ohio Pizza, Inc.*,
    No. 1:17-cv-426, 2019 WL 275711 (S.D. Ohio Jan. 17, 2019) ................................ 9, 12, 19, 25

*N.Y. State Teachers' Ret. Sys. v. GM Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016)............................................................................ 8, 17, 19

*New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky 2006) ..................................................................................... 14

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ................................................................. 21

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) .............................................................. 14

*Palombaro v. Emery Fed. Credit Union*,
   No. 1:15-cv-792, 2018 WL 4635973 (S.D. Ohio Sep. 27, 2018) ............... 9

*Peck v. Air Evac EMS, Inc.*,
   Civil Action No. 5: 18-615-DCR, 2019 WL 3219150 (E.D. Ky. July 17, 2019) ................... 24

*Rikos v. P&G*,
   No. 1:11-cv-226, 2014 WL 11370455 (S.D. Ohio June 19, 2014), *aff'd*, 799 F.3d 497 (6th Cir.
   Ohio 2015); ......................................................................................... 26, 27

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................ 15

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009) ...................................................... passim

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
   No. 10-CV-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ............ 9

*Smith v. Ajax Magnethermic Corp.*,
   No. 4:02CV0980, 2007 WL 33550801 (N.D. Ohio Nov. 7, 2007) ............. 23

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ..................................................................... 17

*UAW v. GMC*,
   497 F.3d 615 (6th Cir. 2007) ................................................ 10, 20, 24, 29

*Vassalle v. Midland Funding, LLC*,
   No. 3:11-cv-00096, 2014 WL 5162380 (N.D. Ohio Oct. 14, 2016) ...... 20, 24

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993) ........................................................ 18

*Wilson v. LSB Indus.*,
   No. 1:15-cv-07614-RA-GWG, 2019 U.S. Dist. LEXIS 133878 (S.D.N.Y. June 28, 2019)..... 33

*Wright v. Premier Courier, Inc.*,
   No. 2:16-cv-420, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018)............. 22

**Statutes**

15 U.S.C. §78u-4(a)(4) .................................................................................. 19

**Other Authorities**

Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons*, Securities Class Action Settlements – 2018 Review and Analysis* (Cornerstone Research 2019) ......................................................... 13

*Manual for Complex Litigation*, Third, §23.14 (West ed. 1995) .................................................. 29

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) ................................................................................ 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ passim

## I. PRELIMINARY STATEMENT

Court-appointed Lead Plaintiff Barbara Forman ("Plaintiff"), on behalf of herself and all Settlement Class Members, respectfully submits this memorandum in support of her unopposed[1] motion for an order preliminarily approving the proposed Settlement of this Action embodied in the Stipulation.[2] The proposed Settlement was reached after the Parties engaged in arm's-length settlement negotiations. Based on a thorough understanding of the facts and the law, the Parties agreed to the proposed Settlement of Two Million One Hundred Thousand Dollars ($2,100,000.00) in cash. If approved, it will fully resolve this Action on behalf of a class of persons who purchased Meridian securities on the open market between March 24, 2016 and October 23, 2017, inclusive ("Settlement Class").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what is fair, reasonable and adequate so that notice of the proposed Settlement can be given to the Settlement Class and a hearing can be scheduled to consider final settlement approval. The Settlement clearly meets these criteria. As discussed below, while Plaintiff believes her claims are meritorious, significant legal and factual issues exist with respect to liability and damages. The $2.1 million cash fund that will be created under the Stipulation represents a beneficial resolution of the Action, and the Settlement is in the best interests of the Settlement Class.

---

[1] At this is Lead Plaintiff's Motion, the statements, arguments, and characterizations contained herein are those of Lead Plaintiff only. Defendants do not oppose preliminary approval of the Settlement or preliminary certification of the Class for settlement purposes only.

[2] "Stipulation" refers to the Stipulation of Settlement executed by the Parties on September 5, 2019, filed as Exhibit 1 to the Declaration of Shannon L. Hopkins in support of Lead Plaintiff's Motion For Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to the Class ("Hopkins Decl.") submitted herewith. Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation. All emphasis is added and all citations and quotations omitted.

Because all requirements for preliminary approval are met, Plaintiff respectfully requests that the Court (a) preliminarily certify the Settlement Class for settlement purposes only; (b) preliminarily approve the Plan of Allocation as fair, reasonable and adequate; (c) approve the form and method of giving notice to the Settlement Class, as provided in the Stipulation; and (d) schedule a Final Approval Hearing to determine whether the proposed Settlement, the Plan of Allocation, and Plaintiff's Counsel's request for attorneys' fees and reimbursement of expenses should be finally approved as fair, reasonable and adequate.

The Proposed Settlement of $2.1 million is an excellent result for this Action. The Proposed Settlement was reached only after years of contested litigation, which included the comprehensive investigation by Plaintiff's counsel prior to filing the initial complaint and the Amended Class Action Complaint, as well as substantial efforts by all Parties in the full briefing of Defendants' motion to dismiss and Plaintiff's motion for reconsideration.

Critically, the Parties also engaged the services of Robert A. Meyer, Esq. (the "Mediator"), a nationally recognized mediator, to assist in the resolution of this Action. The Parties submitted position statements and participated in a mediation before the Mediator on September 25, 2018, as briefing on Defendants' motion to dismiss was ongoing.  While the Parties did not reach a settlement on that day, this initial mediation provided valuable insight into each side's view of the litigation and potential damages. Following the Court's order on Defendants' motion to dismiss and Plaintiff's subsequent motion for reconsideration, the Parties re-visited their prior settlement negotiations, determining that a second mediation before the Mediator could ultimately lead to a resolution. On June 24, 2019, following submissions of renewed position statements to the Mediator in light of the Court's prior orders, and pursuant to a mediator's proposal following a full day of negotiations, the Parties reached an agreement in principle to settle the Action and

subsequently negotiated and executed the Stipulation.

Thus, the proposed Settlement is the result of arm's-length negotiations conducted by experienced counsel with the assistance of an experienced mediator, and represents a substantial recovery of the Settlement Class' estimated damages under the best case scenario. As set forth herein, the proposed Settlement warrants preliminary approval by this Court so that notice can be distributed to members of the Settlement Class and a Final Approval hearing can be scheduled.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Procedural History and Lead Counsel's Investigation

On July 13, 2017, the United States Food and Drug Administration ("FDA") published its Form 483 site inspection report (the "Form 483") related to the Billerica, Massachusetts facility of Magellan Biosciences, Inc., which had been acquired by Meridian in March 2016. The FDA's published findings included observations that several of the Company's LeadCare products were not within regulatory compliance because they were then being sold with a use modification related to an unvalidated incubation period that had not been presented to the FDA, but which was instituted to address the reproducible issue of lead level underestimation when used with vein-drawn blood. The FDA followed up its site inspection report with the October 23, 2017 FDA warning letter which specifically found, *inter alia*, that Magellan's LeadCare II and LeadCare Ultra systems were adulterated under federal law, as well as misbranded based on the unapproved labeling changes made by Magellan, and that the Company's response to the FDA's observations wholly inadequate.

On November 15, 2017, Plaintiff filed a putative class action complaint against Defendants Meridian Bioscience, Inc., John A. Kraeutler, and Melissa A. Lueke, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, as well as Section 20(a) of the Exchange Act. ECF No. 1. On February 15, 2018, the Court appointed

Plaintiff as lead plaintiff for the proposed class and her chosen counsel, Levi & Korsinsky, LLP ("L&K") as lead counsel for the putative class. ECF No. 20. On April 16, 2018, Plaintiff filed her Amended Complaint for Violations of the Federal Securities Laws against Defendants (the "Complaint") on behalf of purchasers of Meridian securities between March 24, 2016 and October 23, 2017, inclusive. ECF No. 29. In drafting their Complaint, Plaintiff's counsel expanded on the investigation of the FDA, speaking with former employees of Meridian to uncover previously undisclosed facts that further bolstered their allegations.

The Complaint seeks damages based upon allegations that Defendants violated section 10(b) of the Exchange Act, and that the Individual Defendants violated sections 20(a) of the Exchange Act. Specifically, the Complaint alleges, *inter alia*, that Defendants knowingly and/or recklessly issued false and misleading statements regarding the efficacy of the Company's LeadCare family of products (collectively, "LeadCare") which ultimately resulted in an inspection and forced recall by the FDA and a halting of the sale of the device for use with testing vein-drawn blood.

On June 15, 2018, Defendants moved to dismiss the Complaint (the "Motion to Dismiss") (ECF No. 32), in which they argued, *inter alia*, that Plaintiff failed to allege material false statements or particularized facts sufficient to give rise to a strong inference of Defendants' scienter and that Plaintiff could not prove loss causation with respect to the alleged January 2017 stock drop. ECF No. 32. On August 14, 2018, Plaintiff filed an Opposition to Defendants' Motion to Dismiss. ECF No. 34. On September 28, 2018, Defendants filed their reply in further support of their Motion to Dismiss. ECF No. 35.

On February 13, 2019, the Court entered an order finding that Plaintiff's Complaint adequately pleaded a single materially false and misleading statement regarding the regulatory

status of the Company's LeadCare products in its November 2016 Form 10-K, but failed to plead a theory of scienter with the requisite particularity, granting the Motion to Dismiss and dismissing the action (the "Dismissal Order") (ECF No. 36).

On March 13, 2019, Plaintiff filed her Motion for Reconsideration (ECF No. 39), seeking the Court's reconsideration of its February 13, 2019 scienter analysis with respect to the single statement found actionable. On May 20, 2019, and after full briefing by the Parties, the Court granted Plaintiff's Motion for Reconsideration, finding that Plaintiff had adequately pleaded that Meridian acted with scienter in November 2016 when it stated that all of its products were FDA-cleared, and denying Defendants' Motion to Dismiss in part. ECF No. 42.

### B. Settlement Negotiations

Following the filing of Defendants' Motion to Dismiss and Plaintiff's opposition thereto, the Parties engaged in initial discussions regarding the potential resolution of the Action with the assistance of the Mediator. In advance of the first mediation, the Parties exchanged mediation briefs outlining their respective positions and damages analyses. On September 25, 2018, the Parties mediated in good faith before the Mediator, but were unsuccessful in resolving the Action.

Following the Court's May 20, 2019 decision on the Motion for Reconsideration, the Parties commenced negotiations regarding discovery and a proposed progression schedule for submission to the Court. During these discussions, the Parties also discussed a potential second mediation before the Mediator. On June 24, 2019, the Parties engaged in a second mediation before the Mediator. In advance of this mediation, the Parties submitted updated mediation submissions setting forth their views of the case and damages, as impacted by the Court's decisions on the Motion to Dismiss and Motion for Reconsideration.

Pursuant to a mediator's proposal, on June 24, 2019 the Parties reached an agreement-in-principle to settle the Action for $2.1 million. On July 9, 2019, the Parties filed a joint motion,

5

informing the Court that the Parties had reached a tentative agreement for the resolution of this action in full and requesting that the Court stay all pending deadlines to allow them time to negotiate and submit a written settlement agreement and motion for preliminary approval of a class action settlement. ECF No. 46.  On July 12, 2019, the Court granted the request and vacated all deadlines pending finalization and submission of the settlement documents to the Court. ECF No. 47.

After reaching an agreement in principle regarding the relief to the Settlement Class, the Parties began preparing the settlement documents, including the Stipulation, the Notice, the Summary and Postcard Notices, the Proof of Claim and Release Form, the exclusion form, and the proposed orders granting preliminary and final approval and entering final judgment.  Over the next several weeks, the Parties exchanged drafts of the Settlement documents.  The Parties finalized and executed the Stipulation on September 5, 2019.

## III.    THE PROPOSED TERMS OF SETTLEMENT

### A.  Settlement Class Definition

The Settlement Class includes all Persons who purchased or otherwise acquired securities of Meridian between March 24, 2016 and October 23, 2017, inclusive, including Plaintiff.[3]

### B.  Monetary Consideration

Under the terms of the proposed Settlement, the Parties have agreed that Meridian or its insurers will make a payment of two million one-hundred thousand dollars ($2,100,000.00) for the

---

[3] Excluded from the Settlement Class are Defendants; members of the Individual Defendants' immediate families; officers, directors, and subsidiaries of Meridian; any firm, entity, or corporation wholly owned by any Defendant and/or any member(s) of an Individual Defendant's immediate family; any trust of which a Defendant is the settlor or which is for his or her benefit and/or that of any member of his or her immediate family (as defined by SEC regulations); and the legal representatives, heirs, or successors-in-interest of the Defendants.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class in accordance with the instructions provided in the Notice.

benefit of the Settlement Class on behalf of all Released Persons, as set forth in greater detail in ¶¶ 2.1–2.10 of the Stipulation. The $2.1 million in cash will be deposited into the Settlement Fund (as defined in ¶ 1.38 of the Stipulation) no later than twenty-one (21) days after both of the following have taken place: (a) the Court has entered the Preliminary Approval Order granting preliminary approval of the Settlement; and (b) Meridian's counsel has received from Lead Counsel a Form W-9 providing the tax identification number for the escrow account. *See* Stipulation ¶ 2.1. Any interest earned will be for the benefit of the Settlement Class. *Id.* ¶ 1.38.

Lead Counsel have considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation, in consultation with their retained financial expert. Lead Counsel did not favor or consider the particular trading history of Plaintiff or of any other individual Settlement Class Members in crafting this plan. A copy of the Plan of Allocation is set forth in the Notice of Proposed Class Action Settlement, § 9, at Exhibit A-2 to the Stipulation.

## C. <u>Release Provisions</u>

Upon the Effective Date, as defined in ¶ 1.6 of the Stipulation, Plaintiff and all other Settlement Class Members, each of their respective Related Persons, and all other Persons who have or claim the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Settlement Class Member any of the Released Claims (or to obtain the proceeds of any recovery therefrom) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed all Released Claims against the Released Persons, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release form, seeks or obtains a distribution from the Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any

aspect of the Stipulation or the Settlement. (Stipulation ¶ 6.4.)[4] Expressly excluded from Released Claims are the matters set forth in ¶ 6.6 of the Stipulation.

The release is fairly targeted to the subject matter of the class action lawsuit that is being settled, covering only claims that could have been alleged in the Action arising out of purchases of Meridian securities during the Settlement Class Period. Similar releases have been approved in this District. *See N.Y. State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 233 n.7 (E.D. Mich. 2016) (granting final approval in a securities settlement brought under Section 10(b) that included "[a]ll claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class" asserted in the operative complaint or which could have been asserted in any forum that arose out of or were based upon the allegations referred to in the Complaint, relating to the purchase of the subject securities); *In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*, No. 3:14-cv-00338-PLR-HBG, 2016 WL 7735229, at *2 (E.D. Tenn. Dec. 12, 2016) (granting final approval in securities action that released "all claims (including Unknown Claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims."). For these reasons, the release adequately balances fairness to absent Class Members and recovery for

---

[4] "Released Claims" means any and all claims, demands, and causes of action of every nature and description (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, charges, or liability whatsoever), whether known or unknown or discoverable or undiscoverable, whether class, derivative, or individual in nature, which now exist or have existed or have been or could have been asserted in any forum by Plaintiff or any Settlement Class Member, or any Person claiming through or on behalf of any of them, against any of the Released Persons arising out of or relating to any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to in this Action, or which could have been alleged in this Action. Released Claims do not include claims to enforce the Settlement. Stipulation ¶ 1.32.

Settlement Class with Defendants' business interest in ending this litigation with finality. *See Dick v. Sprint Communs. Co. L.P.*, 297 F.R.D. 283, 294 (W.D. Ky. 2014) ("Courts frequently approve Rule 23(b)(3) class actions settlements that include releases of parents and other non-parties. Here, the parties' objective was to achieve finality to this action. Defendants assert that they would consider settlement only if it foreclosed the possibility of indemnification claims and other forms of re-litigation. . . Such an arrangement is not atypical and does not render the Settlement Agreement unreasonable or unfair.").

### D. Attorneys' Fees and Reimbursement of Expenses

Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed thirty percent (30%) of the total Settlement Fund (or $630,000). (Stipulation ¶ 8.1.) This amount is in line with the similar contingency-fee awards in the Sixth Circuit. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14360, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015) (awarding class counsel one third of common fund as attorneys' fees, and finding that "[c]ourts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund"); *Daoust v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) (granting counsel 33.33% of common fund in wage hour class action); *Barnes v. Winking Lizard, Inc.,* No. 1:18CV952, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019) (granting 33.33% fee in fair labor class action); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *4 (S.D. Ohio Jan. 17, 2019) (Dlott, J.) ("Even if the Court did not consider fees and expenses as part of the class's benefits, Plaintiff seeks 33% of the amount directly going to the class members. Under either calculation, whether 24.47% or 33%, this Court finds Plaintiff's request is reasonable and within the ranges of fees typically approved by courts in the Sixth Circuit."); *Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2018 WL 4635973, at *14 (S.D. Ohio Sep. 27, 2018) (Dlott, J.) (approving 30% fee request).

Lead Counsel will also apply to the Court for reimbursement of costs and expenses in an amount not to exceed $70,000, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund.  Separately, Lead Counsel requests that Plaintiff be granted a service award not to exceed $10,000 as compensation for her time and effort in pursuing claims on behalf of the Class.  *See infra* Section IV.C.3.

## IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.  The Settlement Approval Process

Courts recognize that public policy strongly favors settlements to resolve disputes, especially in complex class actions. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). ("Public Policy generally favors settlement of class action lawsuits."). "In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation. An appropriate range of reasonableness recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Int'l Union, UAW v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006). Moreover, courts should defer to the private, consensual decision of the parties to settle and advance the "overriding public interest in settling and quieting litigation." *Huguley v. General Motors Corp.*, 128 F.R.D. 81, 87 (E.D. Mich. 1989).

Federal Rule of Civil Procedure 23(e) requires that before a class action is dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the Court and judicial approval must be obtained.  To that end, the Court must find that the proposed settlement is fundamentally "fair, reasonable, and adequate."  *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007). Pursuant to Rule 23(e)(1), as recently amended, the issue at

preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> (i)    the costs, risks, and delay of trial and appeal;
>
> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

As discussed below, the proposed Settlement for $2.1 million in cash easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Sixth Circuit factors, such that Notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.

### B. The Proposed Settlement Meets the Requirements for Preliminary Approval Under Rule 23(e)

#### 1. Plaintiff and Her Counsel Have Adequately Represented the Class

As explained above, Plaintiff and her counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action on their behalf for

nearly two years, including by, among other things, investigating and drafting the complaints, opposing Defendants' motion to dismiss, successfully obtaining a reconsideration of the dismissal order to resurrect the Action, and engaging in two separate mediations before the Mediator that secured the Settlement of the Action for a significant percentage of recoverable damages, particularly given the narrowed scope of the Action following the Court's dismissal order and potential issues related to proving loss causation. *See infra* Section IV.C; *see also Mullins, Inc.*, 2019 WL 275711, at *2 (Dlott, J.) (citing arms-length negotiations conducted by experienced counsel on both sides before an independent mediator as supporting approval of a class action); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *5 (N.D. Ohio Aug. 12, 2019) (finding plaintiff and counsel adequate in settlement context where "negotiations were contentious and hard fought" and secured "substantial benefits for the class.").

### 2. The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation

The Rule 23(e)(2)(B) factor is a procedural one - whether "the proposal was negotiated at arm's length." A "presumption of fairness exists if the settlement is recommended by class counsel after arms-length bargaining." *Bowling v. Pfizer*, 143 F.R.D. 141, 151 (S.D. Ohio 1992).

As noted above, the Settlement was achieved only after two in-person mediation sessions, overseen by an experienced mediator. As part of those discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning, among other things, their respective views regarding the merits of the Action, including Defendants' defenses and issues relating to damages. After intensive back-and-forth negotiations, the Parties reached an agreement in principle to settle the Action for $2,100,000.00 in accordance with the Mediator's proposal.

Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Pfizer,* 143 F.R.D. at 151. Indeed, "giving substantial weight

12

to the recommendation of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate…" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010). Further, the proposed Settlement follows intensive litigation over the course of nearly two years and the Court's decision on the Motion to Dismiss and Motion for Reconsideration. The negotiations were at all times adversarial and at arm's-length, and produced a result that is in the Class's best interests. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).

Armed with extensive information generated through the government's investigation of Magellan and LeadCare, as well as non-public information obtained through their own investigation over the course of litigation, Plaintiff negotiated the Settlement, which recovers nearly half of the total damages related to the stock drops associated with the alleged May and October 2017 disclosures, and almost all of the damages associated with just the October 2017 drop (the only stock drop Defendants were expected to argue at summary judgment remained in the Action given the Court's narrow findings in the Motion to Dismiss and Motion for Reconsideration). *See infra*, Section IV.C.1. This is a remarkable result, especially when compared to the median ratio of settlement to investor losses of 2.6% for securities class action settlements in 2018. *See* Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at 36, Figure 28 (Hopkins Decl., Ex. 2); *see also* Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons*, Securities Class Action Settlements – 2018 Review and Analysis* (Cornerstone Research 2019) at 6, Fig. 5 (indicating that the median settlement as a percentage of "simplified tiered damages" was 6.0% in 2018 and 5.1% historically) (Hopkins Decl., Ex. 3)*.* Accordingly, the Court should grant preliminary approval.

*See In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*, Case No. 1:12-MD-2316, 2016 WL 6909078, at * 5 (N.D. Ohio Jan. 26, 2016) (explaining that a class action settlement is a product of "compromise efforts by adversaries" and "[u]sually neither side will attain all its goals in such a settlement").

Moreover, the continued litigation of this Action would have been subject to the significant risk that the Class would have received nothing for several more years, if at all, even if successful at trial. *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013) ("[T]he likelihood of an appeal was great [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."). Thus, the benefits provided by this Settlement, in light of the risks, strongly favor approval.

## C. The Relief Provided to the Class is Adequate and Supports Preliminary Approval

### 1. The Substantial Benefits for the Class, Weighed Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

Rule 23(e)(2)(C)(i) related to the "costs, risks, and delay of trial and appeal" also supports a finding that the $2.1 million recovery is adequate, as the Settlement provides a significant and immediate benefit to the Class. "[S]ecurities class actions are often difficult and…uncertain," *New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky 2006).

While Plaintiff remains confident in her ability to ultimately prove her claims, further

litigation, including a trial, is always a risky proposition. *See e.g., Engman* v. *Boyd,* 2009 WL 1974460, at *4 (W.D. Mich. July 6, 2009) ("Litigation is expensive and risky. Settlement may be beneficial to all parties, even if both sides believe in the merits of their case."). Indeed, complex securities fraud class actions, such as this one, present myriad risks that plaintiffs must overcome in order to ultimately secure a recovery, and victory at trial hardly ensures that such relief will ultimately flow through to the class. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc*., 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *In re JDS Uniphase Corp. Sec. Litig*., No. C-02-1486-CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict against shareholder class); *Robbins v. Koger Props*., 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig*., 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent). While plaintiffs must prove all elements of their claims to prevail, defendants need only succeed on one defense to potentially defeat the entire action and this case would likely have turned into an unpredictable "battle of the experts" over the disputed loss causation and damages calculations. *See In re Tyco Int'l, Ltd*., 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages"); *see also Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *2 (S.D. Ohio Jan. 25, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.' The Settlement Agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result

15

in a ruling against Named Plaintiffs and the Settlement Class.")

Indeed, in their Motion to Dismiss, Defendants advanced several arguments disputing liability that the Court credited in its Motion to Dismiss order. For instance, Defendants raised numerous merits-based challenges disputing the falsity and materiality of their alleged misstatements. Defendants further argued that the evidence would not support a finding that the alleged misstatements were made with the requisite scienter. *See Helwig v. Vencor, Inc.,* 251 F.3d 540, 552 (6th Cir. 2001). Finally, even if Plaintiff established liability, Defendants would have also contested loss causation and damages, an argument for Plaintiff that became even more daunting following the Court's dismissal of the bulk of Plaintiff's alleged false statements. As touched on in their Motion to Dismiss, Defendants would argue that Plaintiff failed to plead loss causation based on the decline in Meridian's stock price in January 2017 and, potentially with respect to the May 2017 disclosure, given that such a disclosure did not closely mirror the single false statement remaining in the Action. Each of these issues presented significant obstacles to Plaintiff's success at summary judgment or trial. *See, e.g. Ford v. Federal-Mogul Corp.*, No. 2:09-cv-14448, 2015 WL 110340, at *3 (E.D. Mich. Jan. 7, 2015) ("[Class counsel] recognized that continued litigation would be vigorously contested by defendants...[and] that settlement would provide prompt and certain and substantial and positive relief for class members.").

This action was also uncertain because the Parties' potentially divergent views on damages. Plaintiff's expert estimated that total Section 10(b) damages related to the single false statement remaining in the Action and using a two-trader model and assigning 100% weight to the disputed disclosures of January[5] and May 2017 totaled $15.6 million, with the omission of the January drop

---

[5] Plaintiff's loss causation allegations with respect to the January 2017 guidance reduction were premised on a "materialization of the risk" theory. Because of other potentially contributing

from the damages model reducing the total damages figure to just $5.3 million. At summary judgment, Defendants likely would have argued that only damages related to the October 2017 disclosure were relevant to the narrowed action, seeking to limit Plaintiff's and the Class's upside figure. Thus, Plaintiff believes the proposed Settlement – which recovers 13.5% of total maximum damages under her damages model (which assumes the Court or jury would accept *all* of the alleged price drop dates as provable) and nearly 40% of damages omitting the disputed January stock drop is excellent and in the best interests of the Settlement Class. *See, e.g., N.Y. State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. at 238 (E.D. Mich. 2016) (finally approving a settlement where recovery represented between 11% and 25% of maximum possible damages provable at trial, a result the court referred to as a "very favorable recovery compared to the approved settlements in other securities fraud actions"); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving settlement representing approximately 6.25% of estimated damages and noting that this is at the "higher end of the range of reasonableness of recovery in class actions securities litigations").

Moreover, Plaintiff would need to prevail at summary judgment, pretrial motions, trial, and subsequent appeals, a process that could possibly extend for years. Settlement is favored where, as here, the risk of litigation is substantial. See *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 98447, at *560 (E.D. Mich. June 20, 2016) ("the settlements provide an excellent result given the substantial risks of litigation.").

## 2. The Proposed Method for Distributing Relief is Effective

Plaintiff's proposed Plan of Allocation (the "Plan"), as articulated in the Notice to be mailed to potential Class Members, is an effective manner of distributing relief, as required by

---

factors, even if Plaintiff were to succeed in proving her theory at summary judgment or trial, the related damages calculation would still have been subject to additional discounting.

Rule 23(e). A trial court has broad discretion in approving a plan of allocation. *See Sullivan v. DB Invs., Inc*., 667 F.3d 273, 328 (3d Cir. 2011); *In re Chicken Antitrust Litig*., 810 F.2d 1017, 1019 (11th Cir. 1987). The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable, and adequate. *See, e.g., In re Packaged Ice Antitrust Litig*., No. 08-MDL-01952, 2011 WL 6209188, at *23 (E.D. Mich. Dec. 13, 2011).

In determining whether a proposed plan of allocation of settlement proceeds is fair, courts give "considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved." *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *City of Providence v. Aéropostale, Inc*., No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) ("A plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."), *aff'd sub nom. Arbuthnot v. Pierson*, 677 F. App'x 73 (2d Cir. 2015). Approval is particularly warranted here where Lead Counsel consulted with a damages expert to develop a plan of allocation predicated on the same methodology used to calculate class-wide damages. Indeed, the Plan of Allocation reflects an assessment of the damages that could have been recovered at trial under the theories asserted in the Action by Plaintiff. *Id*. The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a pro rata basis based on their "Recognized Loss." Thus, it will result in a fair distribution of the available proceeds among Class Members who submit valid claims, and therefore, should be approved as fair, reasonable, and adequate.

### 3. Attorneys' Fees

Rule 23(e)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intend to seek an award of attorneys' fees of no more than 30% of the Settlement Amount and expenses in an amount not to exceed $70,000, plus interest on both

amounts. This fee request is in line with other settlements approved in recent cases. *See In re Nat. Century Fin. Enterprises, Inc. Inv. Litig.*, No. 2:03-md-1565, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (concluding 30% of the settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit").

Further, as explained in the Notice, Plaintiff intends to request an amount not to exceed $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with her representation of the Class. *See Mullins*, 2019 WL 275711, at *6 ("Courts typically authorize contribution (or 'incentive' awards) to class representatives for their often extensive involvement with a lawsuit . . . Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case.").

### 4. The Parties Have No Side Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of shares of Meridian common stock represented by such optouts equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, ¶9.5. While the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential for the benefit of the Settlement Class. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure than an objector cannot try to hijack a settlement in his or her own self-interest").

### D. <u>There Was No Preferential Treatment; the Proposed Plan of Allocation is Designed to Treat Class Members Equitably</u>

A plan of allocation will be preliminarily approved so long as it is "fair, reasonable, and adequate." *New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. at 235 (E.D. Mich. 2016). Here, the Plan of Allocation is fair, reasonable and adequate because it does not treat Plaintiff or any other Class Member preferentially. *See Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380 (N.D. Ohio Oct. 14, 2016). The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.

The Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of Meridian common stock on the open market during the Class Period and when they sold. The Plan of Allocation also sets out a portion of the Settlement proceeds for persons who have recognized losses from transactions in options during the Class Period.

Each eligible Class Member, including Plaintiff, will receive a distribution pursuant to the Plan. Plaintiff, just like all other Class Members, will be subject to the same formulas for distribution of the Settlement.

### E. <u>Each of the Sixth Circuit Factors are Satisfied</u>

In addition to the Rule 23(e) factors set forth above, the Sixth Circuit utilizes the following factors (certain of which overlap with Rule 23(e)(2)) for determining the adequacy of a class action settlement[6]: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. Each of these is satisfied here.

---

[6] "According to the 2018 Amendment's Advisory Committee Notes, so long as courts use the 23(e)(2) factors as the primary framework, courts may still consider circuit-specific factors in the analysis." *Sonic Corp.*, 2019 WL 3773737, at *5.

20

### 1. The Risk of Fraud or Collusion

As set forth above, the Settlement was obtained at arm's-length with the assistance of a respected third-party mediator among experienced counsel. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, , 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008). The parties engaged in negotiations during two separate in-person mediations. The negotiations were in good faith and were in no way collusive. After nearly two years of vigorous litigation and two separate full days of mediation, the Parties agreed to settle this Action for $2.1 million based on the Mediator's proposal.

### 2. The Complexity, Expense, and Likely Duration of the Litigation

As set forth, *supra*, the Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. "[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Se. Milk*, 2013 WL 2155379, at *4. Courts have recognized for decades that "stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D 525, 528 (S.D.N.Y. 1973). And, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc., Sec. Litig*., 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc*., 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("'Securities class actions are often difficult and . . . uncertain . . . .'").Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial, the $2.1 million Settlement is a meaningful recovery that is in the best interests of the Class.

### 3. The Amount of Discovery Engaged in by the Parties

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced. . . . In this consideration, the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018). While the Parties have not yet engaged in formal discovery, Lead Counsel conducted a thorough investigation into the claims, including a review of Defendants' public documents, conference calls and announcements, SEC filings, wire and press releases published by and regarding Meridian, analysts' reports and advisories about Meridian and information readily obtainable on the Internet. Further, Lead Counsel had the benefit of the FDA's exhaustive investigation and reporting on the violations of federal law occurring at the Magellan facility, which further informed their own investigation into non-public information, as obtained through two separate former employees of Meridian. In addition to the informal fact discovery, Plaintiff engaged the services of a financial damages expert to assist in the analysis of total damages and loss causation based on Meridian's stock movement during the alleged class period. Thus, Lead Counsel conducted a thorough examination regarding the impact of Defendants' alleged conduct on Settlement Class Members and the alleged damages, and were able to act intelligently in negotiating the proposed Settlement.

Plaintiff recognizes that, in order to defeat a summary judgment motion and prevail at trial, she would have to prove, on a Defendant-by-Defendant basis, not only that Defendants were knowledgeable about the alleged false statements related to LeadCare's efficacy issues, but also that their actionable statement was materially false or misleading given the relative percentage of

22

impacted products to Meridian's total product portfolio revenue; that the truth about the false and misleading statements was disseminated into the market; and as a result, Meridian's stock price declined, causing recoverable damages for the Class. For their part, Defendants have denied the material allegations of the Complaint, denied that Plaintiff's allegations state a cognizable claim, and denied that Meridian stockholders have sustained any damages as a result of any alleged misconduct by Defendants. Although Plaintiff believes that the case has merit and she has evidence to establish Defendants' liability, Plaintiff recognizes that, were she to continue prosecution of this Action, there is a substantial risk that nothing would be recovered if this case were to proceed to trial.

### 4. The Opinions of Class Counsel and Class Representatives

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *See Pfizer*, 143 F.R.D. at 151. Lead Counsel have significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country. *See* Hopkins Decl. Ex. 4 (firm resume of L&K). Here, "the Court should defer to the judgment of experienced counsel who has competently evaluated the strength of [their] proofs." *Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 33550801, at *5 (N.D. Ohio Nov. 7, 2007); *see also Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *12 ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the class settlement.")

Plaintiff actively litigated this case since its inception, investigating and filing the initial complaint, seeking approval to lead the Action under the procedure mandated by the Private Securities Litigation Reform Act of 1995, opposing Defendants' motion to dismiss, and successfully obtaining reconsideration of the dismissal order. By the time settlement discussions

began, Lead Counsel had a firm understanding of the strengths and weaknesses of the claims, both factually and legally. In connection with the settlement negotiations, Lead Counsel consulted with sophisticated experts who assisted Plaintiff in preparing for settlement discussions and developing the Plan of Allocation.

### 5. The Reaction of Absent Class Members

Lead Counsel is unaware of any negative reaction to the Settlement by absent Settlement Class Members as of the filing of this motion. Through the proposed notice program, each absent member of the Settlement Class will have an opportunity to be heard – either through their objection to the Settlement or through a request to opt-out. Thus, at this point, this factor does not yet weigh one way or the other in determining the fairness of the proposed Settlement. *See Peck v. Air Evac EMS, Inc*., Civil Action No. 5: 18-615-DCR, 2019 WL 3219150, at *8 (E.D. Ky. July 17, 2019) ("[B]ecause the Court is reviewing the proposed settlement at the preliminary, pre-notice stage, it cannot ascertain the reaction of absent class members.").

### 6. The Public Interest

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co*., 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*, 497 F. 3d at 632 ("we must consider—the federal policy favoring settlement of class actions."); *Vassalle*, 2014 WL 5162380, at *6, *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ("It is axiomatic that the settlement of class-action litigation is favored."); *Griffin v. Flagstar Bancorp, Inc*., 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."). Thus, Plaintiff submits that the proposed Settlement serves the public interest and the Court should apply a "strong presumption" in favor of finding the Settlement fair. *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there

24

is a strong presumption by courts in favor of settlement."). Accordingly, the Settlement should be approved where it "provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources." *Mullins*, 2019 WL 275711, at *3.

## V. CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 IS APPROPRIATE

For the sole purpose of implementing the proposed Settlement, Plaintiff seeks and Defendants agree to the certification of a Settlement Class defined as all persons and entities who purchased or otherwise acquired Meridian securities on the open market during the Settlement Class Period. As discussed below, all requirements of Rule 23 are satisfied and certification of the Settlement Class is appropriate here.

### A. The Settlement Class Members Are So Numerous That Joinder Is Impracticable

"[T]here is no strict numerical test" and "substantial numbers usually satisfy the numerosity requirement" of Rule 23(a)(1). *Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006). Moreover, "[t]he numerosity requirement is generally assumed to have been met in class action suits involving nationally traded securities." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009); *see also, e.g., In re Accredo Health, Inc.*,No. 03-2216 DP, 2006 WL 1716910, at *5 (W.D. Tenn. Apr. 19, 2006). While the precise number of Settlement Class Members is unknown, the numerosity requirement is satisfied here where the Company had over 42.1 million shares of common stock issued and outstanding during the Class Period and was publicly traded on the NASDAQ.

### B. Common Questions of Law or Fact Exist

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." To demonstrate commonality, "[t]he claims of the potential class members need not be factually

identical." *Ross*, 257 F.R.D. at 442. Rather, "[t]he commonality test requires only a single issue common to all class members." *Garden City Emples. Ret. Sys v. Psychiatric Solutions*, No. 3:09-00882, 2012 WL 1071281, at *35 (M.D. Tenn. Mar. 29, 2012); *see also Beard v. Dominion Homes Fin. Servs.*, No. 2:06-cv-00137, 2007 WL 2838934, at *5 (S.D. Ohio Sep. 26, 2007) "The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality." *Ross*, 257 F.R.D. at 442.

This case presents numerous common questions of both law and fact common to all Settlement Class Members, including: (a) whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint, including whether Defendants made false and misleading representations regarding the FDA-cleared status of the family of LeadCare products; (b) whether Defendants acted willfully, with knowledge or severe recklessness, in omitting and/or misrepresenting material facts regarding LeadCare; (c) whether the price of Meridian common stock during the Class Period was artificially inflated due to the material nondisclosures and/or misrepresentations alleged in the Complaint; and (d) whether the members of the Class sustained damages and, if so, the proper measure of damages. "Questions of misrepresentation, materiality, and scienter are the 'paradigmatic common question[s] of law in a securities fraud class action.'" *Ross*, 257 F.R.D. at 443. Because absent Class members would have to prove identical facts and address identical legal issues if they pursued their claims individually, the proposed Class satisfies the commonality requirement of Rule 23(a)(2).

## C. **Plaintiff's Claims Are Typical of Those of the Settlement Class**

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." A proposed class representative's claim is "typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [the] claims are based on the same legal theory.'" *Rikos v.*

*P&G*, No. 1:11-cv-226, 2014 WL 11370455, at *8 (S.D. Ohio June 19, 2014), *aff'd*, 799 F.3d 497 (6th Cir. Ohio 2015); *see also Beard*, 2007 WL 2838934, at *5. "'Typical does not mean identical, and the typicality requirement is liberally construed.'" *Rikos*, 2014 WL 11370455, at *9; *see also Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008) ("The requirement of typicality is not onerous."). In cases alleging a common course of conduct or remedial theory, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Rikos*, 799 F.3d at 509.

Here, Plaintiff's claims are similar to the claims of the other Settlement Class Members. Plaintiff, like all Settlement Class Members, purchased Meridian securities during the Class Period when it was artificially inflated.  Defendants' alleged course of conduct described in the Complaint uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the decline in market value following the alleged corrective disclosures.  Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.  **Plaintiff is an Adequate Representative of the Settlement Class**

The representative party must satisfy Rule 23(a)'s adequacy requirement by showing that she will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To be adequate, a proposed representative must (i) "have common interests with unnamed members of the class"; and (ii) appear willing to "vigorously prosecute the interests of the class through qualified counsel." *Rikos*, 2014 WL 11370455, at *9. "The first requirement overlaps with the commonality and typicality requirements and acts to ensure that the representative have interests co-extensive with, rather than antagonistic to, the interests of the other class members." *Ross*, 257 F.R.D. at 447. The second requirement considers whether the class representative has "sufficient

financial and personal involvement to encourage it to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action." *Id*. at 450.

There are no apparent conflicts of interest between Plaintiff and the absent Settlement Class Members. Indeed, Plaintiff has vigorously prosecuted this action from the outset and was appointed to lead this action based on having the largest financial interest of all competing movants, and she has reached a resolution that is in the best interests of the Settlement Class. Moreover, the Court previously determined that Lead Counsel, Levi & Korsinsky, LLP, is qualified to represent the Settlement Class. As set out in their firm résumé, submitted herewith as Exhibit 4 to the Hopkins Declaration, Lead Counsel has extensive experience prosecuting securities class actions.

### E. The Requirements Of Rule 23 (b)(3) Are Satisfied

Rule 23(b)(3) authorizes class certification where common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011). This case easily meets Rule 23(b)(3)'s requirements.

#### 1. Common Legal and Factual Questions Predominate

"Predominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. As discussed above in Section V.B, there are a number of common questions of law and fact that warrant class certification of this matter. In this securities fraud case, Defendants' alleged liability arises from their conduct with respect to the allegedly false statements related to LeadCare's regulatory compliance. Whether Defendants' publicly disseminated releases and statements during the Settlement Class Period omitted and/or misrepresented material facts about LeadCare is the central issue in this case and predominates over any individual issue that

28

theoretically might arise. *See, e.g., Ross*, 257 F.R.D. at 439-40. Thus, the predominance requirement is satisfied here.

### 2. A Class Action Is the Superior Means To Adjudicate Plaintiff's and Settlement Class Members' Claims

There can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620. Thus, any manageability problems that may have existed here—and Plaintiff knows of none—are eliminated by the Settlement. "[G]iven that the proposed class consists of thousands of members and that the legal claims are narrowed to whether defendants committed securities violations, a class action will be the most fair and efficient way to resolve this dispute." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003); *see also, e.g., Ross*, 257 F.R.D. at 455; *Psychiatric Solutions*, 2012 WL 1071281, at *39.

## VI. THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the Parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, §23.14 (West ed. 1995). Here, the proposed notice and claims administration procedures satisfy due process, Rule 23(e)(2)(c)(ii) and provide adequate notice by providing "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice

29

is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *See UAW*, 497 F.3d at 630 (affirming court's approval of class settlement notice that "explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized" the settlement agreement); *Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 WL 4573289, at *3 (S.D. Ohio Sep. 25, 2018) ("Stated differently, the notice fairly apprise[d] the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.'").

In order to limit costs expended from the Settlement Fund, Plaintiff proposes to mail a Postcard Notice (Exhibit A-1 to the Stipulation) to all Settlement Class Members. The Notice, Proof of Claim, and Exclusion Form will be available free of charge, either by download from the settlement website or by contacting the Claims Administrator, who will then mail the requested copies. A Summary Notice will also be published online through a widely distributed business wire.

The proposed Postcard Notice provides Settlement Class Members with information in a fair, concise and neutral way regarding: (1) the nature of the lawsuit; (2) a summary of the substance of the settlement terms; (3) the class definition; (4) the existence of and their rights with respect to the Action, including instructions on how persons can exclude themselves from the Settlement Class; (5) their rights with respect to the Settlement, including instructions on how to submit a Proof of Claim, object to the Settlement, and request to appear at the Final Approval Hearing; (6) the Final Approval Hearing date; (7) a statement that the Court has preliminarily approved the settlement; (8) a statement that Class Members will release the settled claims unless they opt out; (9) Lead Counsel's intended request for an award of attorneys' fees and

reimbursement of costs and expenses, including the maximum amounts to be requested, (10) Plaintiff's intended request for reimbursement of costs and expenses, including lost wages; (11) that taxes, attorneys' fees, costs and expenses, and notice and administration costs will be deducted from the Settlement Fund before payment to Settlement Class Members; and (12) instructions for obtaining a copy of the Notice, Proof of Claim, and Exclusion Form. Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

The proposed Notice (Exhibit A-2 to the Stipulation) provides more detailed information concerning the topics in the Postcard Notice, including the formula used to calculate payments to Settlement Class Members, and also includes a description of the proposed plan of allocation. The proposed Notice provides that objections may be mailed, in writing, directly to the Court and provides the appropriate court address to which Settlement Class Members should send those objections. It also provides information on how and where to submit requests for exclusion from the Settlement Class.

The proposed Summary Notice (Exhibit A-3 to the Stipulation) also provides essential information about the Action and the Settlement, including an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice. The Summary Notice also explains how to obtain a Notice, Proof of Claim, or Exclusion Form, free of charge, from the Claim's Administrator.

Each of the proposed notices also satisfies Rule 23(h)(1), which requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties, and for motions by class counsel, directed to class members in a reasonable manner." The proposed Postcard Notice, Summary Notice, and Notice each satisfy the requirements of Rule 23(h)(1), as each notifies Class Members

that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount and litigation expenses not to exceed $70,000, to be paid from the Settlement Fund. The Notice also notes the application for an award of no more than $10,000 to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with her representation of the Class.

Plaintiff proposes that the notice and claims process be administered by A.B. Data Ltd. ("A.B. Data"), an independent settlement and claims administrator selected by Plaintiff after a competitive bidding process. A.B. Data is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements throughout the country. *See* Hopkins Decl. Ex. 5. If the Court preliminarily approves the Settlement, Meridian will provide contact information of potential Settlement Class Members to A.B. Data for the purpose of identifying and giving notice to the Settlement Class and A.B. Data will mail the Postcard Notice to all identified potential Settlement Class Members. *See* Stipulation ¶¶ 7.2(a), 11.18. A.B. Data will also use reasonable efforts to give notice to brokerage firms and other nominees who purchased Meridian securities during the Settlement Class Period on behalf of other beneficial owners. These nominee purchasers will provide the names and addresses of the beneficial owners to A.B. Data, which will then promptly send the Postcard Notice by first class mail to such identified beneficial owners. A.B. Data will also cause the Summary Notice to be published on a widely-circulated business wire. *See* Stipulation ¶ 7.2(a). A.B. Data will also publish the Notice and other materials on a settlement website.

Courts routinely find comparable notice programs, combining individual notice supplemented with publication notice, sufficient to provide notice to Class Members. *See, e.g., Mitcham v. Intrepid U.S.A., Inc.*, Civil Action No. 3:17-CV-703-CHB, 2019 WL 2269918, at *6

(W.D. Ky. May 28, 2019) (preliminarily approving usage of postcard notice and claims process in an FLSA action); *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *3 (E.D. Mich. Dec. 10, 2018) (granting final approval to class action where notice was distributed through postcard that notified recipient of alleged violations and timeframe for requesting exclusion and binding effect of the action, and directed class members to an online long-form notice and Claim Form); *Wilson v. LSB Indus.*, No. 1:15-cv-07614-RA-GWG, 2019 U.S. Dist. LEXIS 133878, at *5-6 (S.D.N.Y. June 28, 2019) (granting final approval in a securities class action where the "dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice. . . constituted the best notice practicable under the circumstances"). It is clear that this method of notice will "fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012).

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiff's damages expert and is based primarily on the expert's event study analysis estimating the amount of artificial inflation in the price of Meridian securities during the Class Period.

## VII.     PROPOSED SETTLEMENT SCHEDULE

Plaintiff respectfully requests that Court schedule the dates required by, and set forth in the [Proposed] Preliminary Approval Order, which Lead Counsel will present to the Court. Specifically, Plaintiff requests that the Court schedule the following dates:

33

| Event | Deadline for Compliance |
|---|---|
| Last day to complete mailing of Notice and Proof of Claim Form | No later than twenty-eight (28) calendar days after entry of Preliminary Approval Order. |
| Last day to publish Summary Notice | No later than seven (7) calendar days after the Notice Date. |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards. | No later than thirty-five (35) calendar days prior to the Final Fairness Hearing. |
| Last day for Settlement Class Members to submit comments in support of or in opposition to the proposed Settlement, and the applications for Fee and Expense Awards. | No later than twenty-one (21) calendar days prior to the Final Fairness Hearing. |
| Last day for potential Settlement Class Members to request exclusion from the Settlement Class. | No later than twenty-one (21) calendar days prior to the Final Fairness Hearing. |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards. | No later than seven (7) calendar days prior to the Final Fairness Hearing. |
| Final Approval Hearing | At the Courts earliest convenience at least 128 days after Preliminary Approval |

## VIII.   <u>CONCLUSION</u>

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

Dated:  September 5, 2019

Respectfully submitted,

*/s/Shannon L. Hopkins*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Sebastian Tornatore (admitted *pro hac vice*)
1111 Summer street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com
Email: stornatore@zlk.com

James R. Cummins (0000861)
**CUMMINS LAW LLC**
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Tel.: (513) 721-9000
Fax: (513) 721-9001
Email: jcummins@cumminslaw.us

*Counsel for Plaintiff Barbara Forman*

## CERTIFICATE OF SERVICE

I certify that on September 5, 2019, I filed Plaintiff's MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/Shannon L. Hopkins*
Shannon L. Hopkins