UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| BARBARA FORMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>against<br><br>MERIDIAN BIOSCIENCE INC., JOHN A. KRAEUTLER, and MELISSA A. LUEKE<br><br>Defendants. | Case No. 1:17-cv-00774-SJD<br><br>CLASS ACTION<br><br>Hon. Susan J. Dlott |

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION FOR APPROVAL OF DISTRIBUTION PLAN

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Sebastiano Tornatore (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel.: (203) 992-4523
Facsimile: (212) 363-7171

*Lead Counsel for Lead Plaintiff and the Settlement Class*

**CUMMINS LAW LLC**
James R. Cummins (0000861)
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Tel.: (513) 721-9000
Fax: (513) 721-9001
Email: jcummins@cumminslaw.us

*Liaison Counsel for Lead Plaintiff and the Settlement Class*

Settlement Class Representative and Court-appointed Lead Plaintiff Barbara Forman ("Plaintiff") respectfully moves for entry of the [Proposed] Order Approving Distribution Plan (the "Distribution Order") for the proceeds of the approved Settlement in the above-captioned action (the "Action"). The proposed Distribution Plan is set forth in the Declaration of Eric Schachter (the "Schachter Declaration"),[1] submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. ("A.B. Data") and filed herewith.

If entered by the Court, the Distribution Order would, among other things: (i) approve A.B. Data's administrative recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by A.B. Data as valid and approved by the Court.

## BACKGROUND

On March 17, 2020, the Court entered the Order Granting Final Approval of Settlement (ECF No. 67), granting final approval to the Settlement reached in the Action. As set forth in the Stipulation, Meridian Bioscience, Inc. ("Meridian") deposited $2,100,000.00 in cash into escrow for the benefit of the Class. ¶3.[2]

In accordance with the Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Settlement Class (ECF No. 58) (the "Preliminary Approval Order") entered by the Court, A.B. Data has mailed the Notice Postcard to approximately 17,000 potential Class Members, brokers, and other nominees. ¶2. The Notice Postcard directed potential members of the Settlement Class to the fulsome Settlement website and informed members of the Settlement Class that if they wished to be eligible to participate in the distribution of the Net Settlement Fund,

---

[1] All terms with initial capitalization not otherwise defined herein have the meanings ascribed to them in the Schachter Declaration or in the Amended Stipulation of Settlement, dated October 7, 2019 (the "Stipulation") (ECF No. 56-2).
[2] Citations to "¶__" are to paragraphs in the Schachter Declaration filed herewith.

1

they were required to submit a properly executed Claim Form so that it would be received or postmarked no later than February 4, 2020. ¶¶ 4, 7. On March 17, 2020, the Court entered the Order Granting Final Approval of Settlement (ECF No. 67) (the "Judgment"). The Effective Date of the Settlement has occurred. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants.[3]

## CLAIMS ADMINISTRATION

As set forth in the Schachter Declaration, through November 18, 2020, A.B. Data received and processed 4,810 Proofs of Claim. ¶5. All Claims received through November 18, 2020 have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation set forth in the Notice and A.B. Data has worked with Claimants to help them perfect their Claims and cure any deficiencies. *See* ¶¶5, 17-23,

As discussed in the Schachter Declaration, 3,785 Proofs of Claim are being recommended for rejection to the Court, the majority of which suffer from uncurable deficiencies, including the lack of any purchase or acquisition of Meridian securities during the Class Period or the lack of a Recognized Loss pursuant to the Court-approved Plan of Allocation. ¶34. If A.B. Data determined a Claim to be defective or ineligible, a letter (if the Claimant filed a paper Claim), or an email (if the Claimant filed an electronic Claim), was sent by A.B. Data to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and what was necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). ¶¶17-23. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the letter, or A.B. Data would recommend the Claim for rejection to the extent the deficiency or condition of

---

[3] The Court retained continuing jurisdiction over, among other things, implementing the Settlement, including the disposition of the Settlement Fund. *See* Judgment ¶16.

2

ineligibility was not cured. ¶17. Examples of the Deficiency Notices are attached as Exhibit A and Exhibit B to the Schachter Declaration.

### A. The Single Disputed Claim

After sending notice to nearly 17,000 potential Settlement Class Members, A.B. Data received and processed 4,810 Proofs of Claim through November 18, 2020. ¶¶2, 8. Based on a calculation of a Recognized Loss pursuant to the Court-approved Plan of Allocation, 1,024 of these Proofs of Claims are being recommended for acceptance (971 timely submitted Proofs of Claims *plus* 53 late, but otherwise eligible Proofs of Claim). ¶¶32-33. Of the 3,785 Claims recommended for rejection, a single shareholder has requested Court review despite A.B. Data's best efforts to explain the incurable deficiency. *See* ¶34, Ex. F. The disputed claim ("DC1") was rejected because the claimant did not have a Recognized Loss under the Plan of Allocation. ¶¶24-25. A.B. Data attempted to contact DC1 in an effort to further explain its rationale for rejection, but did not receive any response. ¶25.

As adequate notice of any Claim's deficiency was provided to the Claimant, and the time to cure such deficiencies has long passed, Plaintiff respectfully requests the Court approve A.B. Data's determinations in rejecting the 3,785 deficient Claims.

### B. Late Claims and a Final Cut-Off Date

The 4,810 Claims received through November 18, 2020 include 670 Claims that were postmarked or received after the Court-approved Claim-filing deadline of February 4, 2020, but that were received before November 18, 2020. ¶33. Those late Claims have been fully processed, and 53 of them are, but for the late submission, otherwise eligible. *Id.*; *see also* Exhibit D. Although these 53 Claims were late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these

late Claims did not delay the completion of the administration process or the distribution of the Net Settlement Fund. The Court has discretion to accept Claims received after the filing deadline. *See In re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013) ("[A] district court overseeing [a] settlement distribution has inherent power to accept late claims[.]"); *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2012 WL 12973223, at *3 (C.D. Cal. June 25, 2012) (permitting certain late claims to share in the Net Settlement Fund); *In re Gilat Satellite Networks, Ltd.*, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (same). Lead Counsel respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the Net Settlement Fund solely because it was received after the Court-approved Claim-filing deadline, if it was submitted while timely Claims were still being processed. *See In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) ("[T]here is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement.").

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Counsel respectfully requests that this Court order that any new Claims and any adjustments to previously filed Claims that would result in an increased Recognized Claim amount received after November 18, 2020 (more than nine months *after* the Court-approved deadline for Claims), be barred.

## DISTIRBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed. Lead Counsel respectfully moves for the Court to enter an order approving A.B. Data's determinations concerning acceptance and rejection of the Claims that are included in the present motion and approving the proposed plan

4

for the distribution of the Net Settlement Fund as stated in the Schachter Declaration (the "Distribution Plan").

### A. Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, A.B. Data will distribute 100% of the Net Settlement Fund, after deducting all payments previously allowed, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, any escrow fees, and appropriate reserves (the "Initial Distribution"). In the Initial Distribution, A.B. Data will calculate award amounts for all Authorized Claimants. A.B. Data will first determine each Authorized Claimant's pro rata share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See* ¶37. In accordance with the Court-approved Plan of Allocation, A.B. Data will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund at this time. *Id.* A.B. Data will then recalculate the pro rata share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more (the "Distribution Amount"). *Id.* The Net Settlement Fund will be distributed pro rata to Authorized Claimants whose Distribution Amount calculates to $10.00 or more. *Id.*

In order to encourage Authorized Claimants to promptly cash their checks, Lead Counsel proposes that the Initial Distribution checks bear the notation: "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." *Id.* After that 90-day distribution deadline or in the case of an undeliverable check, A.B. Data will follow up and attempt to locate those Claimants, reissuing checks if necessary. *Id.*, ¶37 n.4. Plaintiffs also propose that subsequent distributions will have a 30-day

5

stale date. *Id.* Authorized Claimants who do not cash their checks within the time allotted will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all of these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *Id.*

### B. Additional Distribution(s) of the Net Settlement Fund

After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, A.B. Data will, after consulting with Class Counsel, conduct a second distribution of the Net Settlement Fund (the "Second Distribution") within a reasonable period of time. ¶37(b). In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution (including the funds for all void stale-dated checks), after deducting A.B. Data's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of the Second Distribution), and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, any escrow fees, and appropriate reserves, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their pro rata share of the remaining funds. *Id.* When Class Counsel, in consultation with A.B. Data, determine that further distribution is not cost-effective, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, any escrow fees, and appropriate reserves, will be contributed to the following recipient: The Legal Aid Society of Cincinnati. *Id.*; Judgement ¶24.

### **PROPOSED RECORD RETENTION AND DESTRUCTION PLAN**

Plaintiff additionally requests that the Court order that A.B. Data be allowed to destroy paper copies and all supporting documentation of paper Proofs of Claim one year after distribution of the Net Settlement Fund, and that it be allowed to destroy the electronic copies of Proofs of Claim and all supporting documentation one year after all funds have been distributed.

### **RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. Accordingly, Lead Counsel respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiff, Lead and Liaison Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

## **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully submit that Plaintiff's Motion for Approval of Distribution Plan should be granted, and the [Proposed] Order Approving Distribution Plan should be entered.

Dated:  December 9, 2020                    Respectfully submitted,

*/s/Shannon L. Hopkins*
**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Sebastian Tornatore (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com
Email: stornatore@zlk.com

James R. Cummins (0000861)
**CUMMINS LAW LLC**
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Tel.: (513) 721-9000
Fax: (513) 721-9001
Email: jcummins@cumminslaw.us

*Counsel for Plaintiff Barbara Forman*

## **CERTIFICATE OF SERVICE**

I certify that on December 9, 2020, I filed LEAD PLAINITFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR APPROVAL OF DISTRIBUTION PLAN with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

                                               */s/Shannon L. Hopkins*
                                               Shannon L. Hopkins